230 A.2d 854.

AGNES K. CROFWELL *vs.* HARRY GOLDSTEIN, *Guardian.*

JUNE 15, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.  This is an appeal from a decree of the probate court of the city of Cranston appointing Harry Goldstein, a member of the bar of this state, guardian of the person and estate of Agnes K. Crofwell.  The case was twice heard in the superior court on preliminary matters and each time before a different justice.  At the earlier hearing it considered, but did not decide, Goldstein's motion to dismiss the appeal on the ground that it had not been taken by an aggrieved person; at the later it in substance denied the mo-

tion to dismiss, quashed and dismissed the probate court decree, and declared null and void the letters of guardianship which had issued to Goldstein. The case is now here on Goldstein's exceptions to the refusal to dismiss the probate appeal, to the order of quashal and dismissal, and to various rulings, evidentiary and otherwise, taken during the proceedings in the superior court.

The dispute concerns who shall be guardian of the person and estate of Agnes K. Crofwell, a longtime resident and domiciliary of the city of Providence who, on March 26, 1958, at the age of 72, was committed to the state hospital for mental diseases upon the certification of two practicing physicians that she was mentally ill and in need of long-term hospitalization. She has at all material times been confined at that institution which is located in the city of Cranston. The parties agree that she is of unsound mind and in need of a guardian to manage her person and estate. They disagree only on who should hold that office.

James B. Crofwell, Agnes' nephew, initiated this litigation on February 3, 1964, when he petitioned the Cranston probate court to appoint a guardian of the person and estate of his aunt. He alleges in his petition that his aunt was a resident of and had a legal settlement in Cranston, that she was of unsound mind, and that she lacked discretion to manage her estate. Conformably to G. L. 1956, §33-15-9, service of process was made upon Agnes and a guardian ad litem was appointed to represent her interests.

At this stage of the proceedings, Arthur L. Conaty, also a member of the bar of this state, entered the case. He had represented Agnes prior to her 1958 commitment, but he had not seen her subsequent to her becoming a patient at the state hospital. Although lacking specific authorization, he petitioned the probate court to dismiss the pending guardianship proceedings. His petition, purporting to be brought on behalf of Agnes and signed by him as her at-

torney, urged that the probate court of Cranston lacked jurisdiction because she was a resident and domiciliary of Providence, rather than of Cranston.[1]  On March 10, 1964, that petition was denied and on the same day the Cranston court appointed Goldstein guardian of Agnes' person and estate.  From that decree, Conaty, signing both the claim and the reasons of appeal "Agnes K. Crofwell, by her Attorney, Arthur L. Conaty," appealed to the superior court.

On February 24, 1964, three weeks following the commencement of proceedings in Cranston but prior to Goldstein's appointment, Conaty petitioned the probate court of the city of Providence for his own appointment as Agnes' guardian.  He filed as "Arthur L. Conaty, next friend of Agnes K. Crofwell and Trustee under the will of Mary J. Crofwell for the use and benefit of said Agnes K. Crofwell."  Notwithstanding Goldstein's intervening appointment and qualification as guardian under a decree of the court in Cranston, the Providence court on March 24, 1964, granted the petition.  Named as guardian, rather than Conaty, was F. Thomas O'Halloran, also a member of the bar.  Both Goldstein and Conaty appealed, but that case has not yet been heard in the superior court; and those appeals, except perhaps peripherally, are not before us at this time.

At the initial hearing in the superior court the question was Goldstein's motion to dismiss the Conaty appeal.  He argued that Agnes could not properly appear "through an attorney who purports to act for her."  The trial justice agreed.  In a bench decision he found that Conaty was not an aggrieved person within the contemplation of §33-

---

[1]Jurisdiction to appoint guardians is conferred by §33-15-3 which reads:
"The probate court in each town, if occasion shall require, shall have the power to appoint or approve guardians of the persons and estates or of the person or estate of minors and others who shall reside or have a legal settlement in the town, and of the estate within this state of minors or others who reside without this state and have estate within said town."

23-1 and that he lacked the standing which that statute fixed as a precondition for the prosecution of an appeal from a decree of a probate court. However, even though he considered Conaty's appeal "to be no appeal at all," he did not dismiss it. Instead, he deferred decision on Goldstein's motion to dismiss and, in an attempt to avoid the confusion which he foresaw as the result of two separate courts of probate appointing different guardians for the same person and estate, he invoked §33-23-17[2] and directed that O'Halloran, in his capacity as guardian, be added as a party appellant. At the same time he suggested, again under authority of §33-23-17, that the appeal from the Cranston decree appointing Goldstein and the two appeals from the Providence decree appointing O'Halloran be consolidated for hearing. Although no order or decree embodying these findings and directions was entered, the jacket entry made following the hearing reads: "1964 June 25 — Weisberger, J.—appellee's motion to dismiss is held until F. Thomas O'Halloran who is ordered to become a party of this action is summoned into this court. Exceptions of both parties are noted." O'Halloran, pursuant to that directive, was in due course added as a party, but for reasons which the record does not disclose, the trial justice's suggestion that the three appeals be consolidated for hearing was not followed.

Thereafter, a different justice of the superior court heard the parties on the separate but substantially identical motions of O'Halloran and Conaty to quash and dismiss the Cranston petition and the decree entered thereon appointing Goldstein guardian. He found that Agnes was a dom-

---

[2]Section 33-23-17 reads:

"Whenever there shall be more than one (1) appeal in the superior court, relating to substantially the same matter, the court may by special order provide for the consolidation thereof, for admitting or summoning in other parties, and for giving notice or further notice to parties in interest."

iciliary of Providence rather than of Cranston, and equating her domicile with the residence and legal settlement requirement established by §33-15-3 as a jurisdictional prerequisite in guardianship proceedings, he concluded that the probate court of Cranston had exceeded its authority by entertaining and acting upon the petition for the appointment of a guardian for Agnes.

Based upon those findings he ordered that the Cranston proceedings be quashed and dismissed and that the Goldstein appointment be vacated. Giving scant heed in his bench decision to Conaty's status as an appellant, he found in substance that his appeal "* * * inured to the benefit of the ward and that her subsequent guardian could take advantage of these particular proceedings."

Although a number of exceptions have been briefed and argued, those principally relied upon relate first to the ruling vacating the Goldstein appointment, and secondly to the issue of whether or not Conaty was entitled to prosecute an appeal. The latter is dispositive. Unless Conaty is qualified as an appellant, his purported appeal, as the trial justice said, was "no appeal at all." Who may claim an appeal from a probate decree or order is controlled by §33-23-1. It permits any person *aggrieved* to appeal to the superior court by filing a claim of appeal within 40 and reasons of appeal within 50 days after the entry of the order or decree.

While the language used by the legislature presents no problem, the question of when a person is aggrieved is not always susceptible to a simple answer. While ultimately each case will, of course, turn on its own peculiar facts, there are certain well-defined controlling standards by which the facts of each case are measured. Broadly stated, aggrievement depends upon whether the claimant is able to present a justiciable question as to a potential interest in an estate. *Spooner* v. *Tucker,* 86 R. I. 266, 134 A.2d 403. More specifically, a person is *aggrieved* if his grievance is a substanial

one amounting to "* * * a denial of some personal or property right or the imposition upon a party of a burden or obligation." *Tillinghast* v. *Brown University,* 24 R. I. 179, 52 A. 891. See also: *Whitmarsh* v. *McGair,* 84 R. I. 226, 122 A.2d 748; *Ankney* v. *Pettine,* 79 R. I. 471, 90 A.2d 430; *Roullard* v. *McSoley,* 54 R. I. 232, 172 A. 326.

Here the controlling facts are clear-cut and undisputed. The trial justice who first heard the case found that Conaty had no direct or indirect property interest in Agnes' estate, that he had no present or prospective right to inherit from her, and that he had not represented her as an attorney subsequent to her commitment in 1958. Nothing in that factual background brings Conaty's appeal within the purview of the statute. His only possible interest was as her former attorney and that relationship does not constitute a basis for presenting a justiciable question as to a potential interest. While there may have been a practical reason at the initial hearing for deferring a decision on the aggrievement issue, it should certainly have been resolved at the subsequent hearing. Failure to dismiss[3] the appeal on aggrievement grounds is reversible error.

The exception of the appellee Harry Goldstein to the refusal of his motion to dismiss the appeal is granted. The case is remitted to the superior court with direction to grant said motion, and for further proceedings in accordance with this opinion.

---

[3]O'Halloran had ample opportunity to challenge the Cranston decree directly. If his position as the appointive guardian gave him status as an aggrieved person, an issue we do not reach, his appointment came at an early enough date so that he could have appealed from the Cranston decree; and if prevented from presenting such an appeal by reason of accident, mistake or unforeseen cause, he could at any time within one year after the Goldstein appointment have petitioned this court under §9-21-6 to allow an appeal to be taken out of time.

362

*Arthur L. Conaty,* for appellant Agnes K. Crofwell, *F. Thomas O'Halloran,* for appellant Agnes K. Crofwell, for plaintiff.

*Abraham Goldstein,* for appellee, for defendant.