328 A.2d 419.

NORMAN J. VERMETTE *vs.* LOUISE S. CIRILLO,

*Administratrix of the Estate of Leo Ciarlelli.*

NOVEMBER 27, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. In this certiorari proceeding we are presented with a question of first impression. The question

to be resolved is whether an individual nominated in a will as an executor can be considered as a "person aggrieved" by the denial of his petition to admit the will to probate.

The records certified to us disclose that on July 1, 1971, Leo Ciarlelli died a resident of the town of Bristol. Shortly thereafter, Norman J. Vermette, the executor designate, filed a petition seeking both admittance of the will and a codicil to probate and his appointment as executor. The will was dated February 6, 1968. The codicil was executed on June 19, 1971. The petition was granted. Within a matter of weeks, a controversy erupted when it became known that the attorney who drew the will and who was named as a beneficiary of a $78,000 legacy, was the probate judge who had granted the petition. This sequence of events caused the resignation of the judge, the revocation of his decree, and the withdrawal of Norman's petition.

The town council filled the Probate Court vacancy. The new judge was presented with two petitions relating to the Ciarlelli estate. One was a petition by a niece and a nephew of the deceased asking that the niece be appointed administratrix of her uncle's estate. Norman submitted a second petition for probate of the will. Both petitions list the decedent's personal assets as having a value of $150,000. After a hearing, the Probate Court denied Norman's petition and a decree was entered granting the petition seeking the niece's appointment as the administratrix of the estate. Norman took an appeal to the Superior Court.

When the appeal was perfected in the Superior Court, the niece moved to dismiss Norman's appeal contending that as an executor designate Norman was not a "person aggrieved" within the meaning of our probate appeal statute. General Laws 1956 (1969 Reenactment) §33-23-1.

The niece's motion was denied, and we issued the common-law writ of certiorari.

Generally speaking, the aggrievement that entitles one to judicial review flows from a judgment that adversely affects in a substantial manner some personal or property right of the one seeking review or imposes some burden or obligation upon him. This principle was first laid down at the turn of the century in *Tillinghast* v. *Brown University,* 24 R. I. 179, 52 A. 891 (1902), and it has been repeated innumerable times. Fifteen years after *Tillinghast,* this court recognized that a fiduciary such as a duly qualified executor or administrator could be aggrieved in his representative capacity even though he has suffered no personal harm. *Hall* v. *Burgess,* 40 R. I. 314, 100 A. 1013 (1917). Beginning in the 1950's, this court fashioned another exception whereby another class whose members, while not technically aggrieved, are permitted to obtain review because they represent the general public whose vital concern in the ultimate outcome of a particular controversy extends beyond the interests of the immediate parties. *Board of Police Comm'rs* v. *Reynolds,* 86 R. I. 172, 133 A.2d 737 (1957).

Rhode Island's probate statutes specifically require (1) any person having custody of a will to deliver the instrument, within 30 days after being notified of the testator's death, to the proper Probate Court or to the executor named in the will;[1] (2) a Probate Court clerk to notify an executor who is not a party to a petition of the pendency of the probate proceeding;[2] (3) an executor-designate having possession of a will to present the will for probate within 30 days after the testator's death or after he first knows of his nomination ("failure or refusal to comply

---

[1]General Laws 1956 (1969 Reenactment) §33-7-5.

[2]General Laws 1956 (1969 Reenactment) §33-7-9.

with the 30-day limitation will be deemed a declination of the office");[3] and (4) the Probate Court to appoint the executor named in the will if the designee is legally competent and gives the requisite bond (the court may not inquire into the wisdom or suitability of the selection, but must, if these two conditions are satisfied, issue letters testamentary).[4]

The statutory stipulations to which we have just alluded are expressions of the principle found in *Hazard* v. *Engs,* 14 R. I. 5, 7 (1882), where it was held that it is the "duty" of the person nominated as executor, unless he "renounces" the appointment, to do "what is reasonable to establish the will." In *Hazard,* the will had been admitted to probate and the heirs appealed. The court ruled that since the executor was dutybound to defend the will, he was entitled to be reimbursed from the estate for the reasonable expenses he incurred as a result of the litigation.

The petitioner-administratrix acknowledges that in cases similar to *Tillinghast* and *Hall* fiduciaries have been held to be aggrieved, but she seeks to distinguish Norman's appeal from the cases where the nominated executor had won the first round, the will had been admitted to probate, and letters testamentary had been issued. She claims that since Norman lost in the Probate Court he has no statutory duties nor any lawful recognition as the deceased's representative. Such a conclusion, while at first blush may seem logical, is without substance when one considers the statutory mandates to which we have just referred and the rationale of *Hazard.*

If an executor in the Superior Court has the right to defend against an attack on the will which was originally

---

[3]General Laws 1956 (1969 Reenactment) §33-8-3.

[4]General Laws 1956 (1969 Reenactment) §33-8-1; *Trustees of House of the Angel Guardian* v. *Donovan,* 71 R. I. 407, 46 A.2d 717 (1946).

unsuccessful in the Probate Court, it is difficult to see how such right is lost because the first attack is successful. Many a general has lost a battle but has gone on to win the war!

It is quite apparent from our examination of the statutes relating to the custody and probating of wills that the designated executor has some status when an instrument is being presented for probate. In *Hazard,* the designee was referred to as the "representative of the will, and of all interests created by it." He has also been described by other courts as the "champion of the will"[5] or the "* * * champion of the common cause, and charged to keep the lists against all antagonists * * *."[6] From time immemorial, courts have been guided by the proposition that an individual, if he is of sound mind and under no undue restraint, can dispose of his property as he sees fit provided his dispositive scheme is not repugnant to law. Furthermore, a testator can nominate a representative who can act as his spokesman when he can speak no more. This spokesman is charged with the duty of making a good-faith effort to advance the expressed intent of the deceased. Having in mind the interests to be served by one's right to make a testamentary disposition of property, we believe that the Probate Court's denial of Norman's petition constituted a threefold aggrievement. Norman was aggrieved as a representative of the deceased, as a representative of those legatees who might benefit under the will, and as a representative of the public in-

[5]*Burmeister* v. *Gust,* 117 Minn. 247, 249, 135 N.W. 980, 981 (1912).

[6]*Ward* v. *Brown,* 53 W.Va. 227, 236, 44 S.E. 488, 491 (1903).

terest that a testator's wishes[7] be effectuated. In finding aggrievement,[8] we join the overwhelming majority of jurisdictions that have considered this question. 3 Bowe-Parker, *Page on Wills* §26.135 at 309, & n.3 (1961); 3 Woerner, *American Law of Administration* §544 at 1855, & n.2 (1923); Annot. 88 A. L. R. 1158, 1171 (1934).

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified to this court are to be returned to the Superior Court.

*Edwards & Angell, John H. Blish,* for plaintiff-respondent.

*D. A. St. Angelo,* for defendant-petitioner.

---

[7]The deceased in his will left specific instructions as to his funeral and burial. He directed that the residuary estate bear the burden for the payment of all taxes. The residue was to be divided equally between two religious organizations. One nephew who would share in an intestate distribution is specifically omitted in the will because of the deceased's displeasure at the nephew's departure from the family circle.

[8]Vermont is listed in the minority. Its Supreme Court has acknowledged the merit in the position we have just adopted but, in the light of the initial judicial view taken many years ago of aggrievement by a Probate Court decree plus a subsequent legislative acquiescence in that view, it decided that if change was to come, it should emanate from the Legislature. *In re Estate of Gaskell,* 123 Vt. 57, 181 A.2d 67 (1962).