Lambert L. LIND

v.

William J. McSOLEY, Jr., Executor of
the Estate of Georgianna J.
Peltier, et al.

No. 78–393–Appeal.

Supreme Court of Rhode Island.

July 22, 1980.
Reargument Denied Aug. 28, 1980.

Adolph N. Anderson, Jr., Providence, for plaintiff.

William H. McSoley, Jr., pro se.

Petrarca & McGair, Louis A. Petrarca, Jr., Warwick, Letts, Quinn & Licht, Daniel J. Murray, Robert N. Huseby, Providence, for defendants.

## OPINION

MURRAY, Justice.

The plaintiff Lambert L. Lind (Lind) appeals to this court from dismissal of his probate appeal to the Superior Court filed pursuant to G.L.1956 (1969 Reenactment) § 33–23–1.[1] Lind had appealed to the Superior Court from an order of the Warwick Probate Court which allowed a first and final account of the estate of Georgianna J. Peltier. A Superior Court justice determined that Lind lacked standing under § 33–23–1 to appeal from the Probate Court order and dismissed his appeal. Lind appealed from that dismissal and urges this court to rule that he was a "person aggrieved" under § 33–23–1 by the order of the Warwick Probate Court allowing the final account of the decedent's estate.[2]

The decedent, Georgianna J. Peltier (Georgianna) died testate in 1962. In "Clause Eighth" of her will she bequeathed 42.5 percent of her net estate to her son Leo E. Peltier (Leo). She made the bequest upon the condition that Leo first account to her estate for all his debts outstanding to her. She directed her executor, if such debts existed to deduct amounts equal to those debts from Leo's share of her net estate and to pay those amounts to her daughter Eva Peltier Olsen (Eva). Administration of Georgianna's estate, consistent with the terms of her will, commenced in April 1962 with the appointment of defendant William J. McSoley, Jr. (McSoley), as executor.

In 1968 Lind filed suit against Leo, seeking recovery on two notes executed by him. Leo died in 1969, prompting Lind to file a claim against Leo's estate. In her capacity as administratrix, Leo's daughter Audrey Tedeschi (Audrey) defended Leo's intestate estate against Lind's suit. Lind prevailed eventually and his claim was reduced to judgment in 1976.

Leo, however, died in poverty and his estate could not satisfy Lind's judgment. Lind then looked to Georgianna's estate as a possible source of funds. He urged Audrey to expedite settlement of Georgianna's estate, prompting her to petition the Probate Court and request it to cite McSoley for his failure to file an inventory and render an account. Rather than rely on Audrey's efforts, Lind filed an identical petition, describing himself as "a party in interest." He did not, however, file a statement of his claim against Georgianna's estate under the provisions of chapter 11 of title 33 of the 1956 General Laws (1969 Reenactment).

As an apparent response to those petitions, McSoley filed an inventory and rendered an interim account of Georgianna's estate in July 1976. By early 1978, he prepared and filed a final account that contained no reference to Georgianna's bequest to Leo under "Clause Eighth" of her will. McSoley construed "Clause Eighth" to require Leo, or his estate, to account to Georgianna's estate for the debts alluded to in that provision. In the absence of such an account, McSoley concluded that the legacy must be paid to Georgianna's daughter Eva. At a hearing held by the Warwick Probate Court, both Audrey and Lind contended that in the absence of proof of Leo's indebtedness to Georgianna, Leo's estate was entitled to the legacy. The court apparently

1. General Laws 1956 (1969 Reenactment) § 33–23–1, as amended by P.L.1975, ch. 120, § 1 provides in part: "Any person aggrieved by an order or decree of a court of probate may * * appeal therefrom to the superior court * *."

2. Lind also has briefed and argued a question relating to the fiduciary duties owed by Audrey Tedeschi in her capacity as administratrix of Leo's estate. Lind did not raise that issue in the Superior Court and is therefore foreclosed from raising it for the first time on appeal. See *Wickes v. Kofman*, R.I., 402 A.2d 591, 594 (1979).

agreed with McSoley's construction of Georgianna's will and approved the final account, which omitted any payment to Leo's estate.

Lind promptly appealed to the Superior Court pursuant to § 33–23–1 from the Probate Court's order allowing the final account. In addition to McSoley, Lind named Audrey as an adverse party to the Superior Court proceedings because she refused to join in his appeal as administratrix of Leo's estate. Eva Peltier Olsen, the principal beneficiary of Georgianna's estate, subsequently intervened as a defendant to Lind's appeal. McSoley, Audrey, and Eva each moved to dismiss Lind's appeal, arguing that Lind was not a "person aggrieved" within the meaning of § 33–23–1. A justice of the Superior Court agreed and granted their motions to dismiss.

■ We observe that the interest Lind asserts in Georgianna's estate is not a direct one; it derives solely from his status as a judgment creditor of Leo's estate. Neither does Lind claim to represent Leo's estate directly in this proceeding. Rather, Audrey Tedeschi has appeared in all proceedings as the administratrix of Leo's estate. Thus, if the final account of Georgianna's estate did not satisfy the terms of Leo's legacy, Audrey as administratrix of Leo's estate was the "person aggrieved" by the Probate Court's allowance of that account. Lind therefore represents in this proceeding only his personal interests, if any, in the estate of Georgianna J. Peltier.

The personal interest Lind claims in Georgianna's estate is identical to the interest asserted by a judgment creditor who commences an action to reach and apply his judgment debtor's interest in a decedent's estate. *See Gorman v. Stillman*, 24 R.I. 264, 52 A. 1088 (1902); G.L.1956 (1969 Reenactment) § 9–28–1.[3] In such an action the creditor requests the estate's executor or administrator to pay his judgment directly from the debtor's share of the estate. If the creditor prevails in an action to reach and apply, he acquires only those rights his debtor has in the estate. *See Schaeffer v. Zaltsman*, 29 Ill.App.3d 1011, 331 N.E.2d 212 (1975). As a result, the interest asserted by the creditor is adverse to, but derived from, the debtor's interest.

As a person asserting an interest in the nature of a bill to reach and apply Leo's legacy, Lind claims for himself the right of Leo's estate to share in Georgianna's estate. In light of the adverse character of their interests Lind cannot claim to derive standing in this matter directly from Leo's estate. We conclude therefore that Lind's asserted interest constitutes a claim against Georgianna's estate within the meaning of tit. 33, ch. 11.

Section 33–11–4 provides in part that "[a]ll persons having claims, including pending suits, preferred claims and claims of the executor or administrator, against the estate of a deceased person shall file statements of their claims in the office of the clerk of the probate court." "The object of the statute is to facilitate the settlement of the estates of deceased persons, and to make all the prescribed steps towards the distribution of the estate conclusive when they have once been taken." *Anderson v. Williams*, 26 R.I. 64, 67, 58 A. 251, 252 (1904); *Vennerbeck & Clase Co. v. Estate of Markham*, 54 R.I. 366, 368, 173 A. 549, 550 (1934).

Consistent with that objective in tit. 33, ch. 11, a comprehensive scheme has been provided by the Legislature which requires full adjudication of claimant's rights prior to final distribution of an estate. We have ruled in light of that scheme for adjudication that claimants who fail to file a statement of claim as required by tit. 33, ch. 11

---

**3.** General Laws 1956 (1969 Reenactment) § 9–28–1 provides:

"Any judgment creditor, after his execution has been returned wholly or in part unsatisfied, may by a civil action in the nature of a creditor's bill reach and apply and subject to the payment and satisfaction of his judgment any equitable estate, any equitable assets or any choses in action of the judgment debtor, except such as shall be exempt from attachment by virtue of statutory provision. The remedy provided by this section shall be cumulative and shall not supersede any existing remedy."

lack standing to challenge a final account of a decedent's estate in the Probate Court. *Smith v. Estate of Catterall*, 107 R.I. 729, 735, 271 A.2d 300, 303 (1970); *Chatigny v. Gancz*, 84 R.I. 255, 258, 123 A.2d 140, 141 (1956); *Wright v. Roberts*, 47 R.I. 306, 312, 132 A. 875, 878 (1926).

We look to the claims procedure prescribed in tit. 33, ch. 11 also to analyze the "person aggrieved" language of § 33–23–1 because those provisions are interrelated parts of the statutory scheme governing Probate Court procedure for administration of decedent's estates.[4] As such, § 33–23–1 and tit. 33, ch. 11 are statutes in *pari materia* and should be considered together to achieve harmonious interpretations consistent with their general purpose and scope. *See The Herald Press, Inc. v. Norberg*, R.I., 405 A.2d 1171 (1979); *Providence Teachers Union, Local 958, American Federation of Teachers, AFL–CIO v. School Committee of Providence*, 108 R.I. 444, 276 A.2d 762 (1971). In our view, the Legislature intended to require "persons having claims" to file a statement of those claims pursuant to tit. 33, ch. 11 before they may assert the status under § 33–23–1 of a "person aggrieved" by a Probate Court order or decree concerning a decedent's estate. To rule otherwise would be to create the anomalous result of conferring standing on persons on appeal from Probate Court orders who would have no standing to contest those orders in the Probate Court. *See Smith v. Estate of Catterall; Chatigny v. Gancz; Wright v. Roberts*, all *supra*.

In this case Lind was not complied with the claims procedure; he nevertheless asserts standing to appeal directly under *Tillinghast v. Brown University*, 24 R.I. 179, 52 A. 891 (1902). In *Tillinghast* we ruled that

a person is aggrieved within the meaning of § 33–23–1 if a Probate Court order or decree adversely affects in a substantial manner some personal or property right of the one seeking review or imposes some burden or obligation upon him. *Vermette v. Cirillo*, 114 R.I. 66, 68, 328 A.2d 419, 420 (1974); *Crofwell v. Goldstein*, 102 R.I. 356, 230 A.2d 854 (1967); *Spooner v. Tucker*, 86 R.I. 266, 134 A.2d 403 (1957). Lind claims that application of the *Tillinghast* standard leads to the determination that he is a "person aggrieved" by the Probate Court's order. As a judgment creditor of Leo's estate, Lind considers himself entitled to satisfaction of that judgment from all assets of Leo's estate. According to Lind, "but for" the Probate Court's order, Leo's estate would receive the legacy bequeathed in "Clause Eighth" of Georgianna's will, thereby enabling Lind to satisfy his judgment against Leo's estate. Thus in Lind's view, the order of the Probate Court deprived him of the right to satisfy his judgment against Leo's estate and therefore "aggrieved" him within the meaning of § 33–23–1.

Lind's reliance on the *Tillinghast* standard is of no avail. We have applied the *Tillinghast* standard in cases involving decedent's estates to determine whether a person "is able to present a justiciable question as to a potential interest in an estate." *Crofwell v. Goldstein*, 102 R.I. at 360, 230 A.2d at 857; *Spooner v. Tucker*, 86 R.I. at 271, 134 A.2d at 406. A claimant, however, has no potential interest in an estate until he complies with the filing requirements of tit. 33, ch. 11. *Smith v. Estate of Catterall* and *Wright v. Roberts*, both *supra*. We would therefore apply the *Tillinghast* standard, if at all,[5] only to ascertain the stand-

---

4. *See Pickering v. Pickering*, 64 R.I. 112, 116, 10 A.2d 721, 722–23 (1940), where this court stated that statutes relating to "the making, custody and probate of wills * * * are * * * parts of one system which the legislature has provided for devolution of property by will."

5. In citing to *Tillinghast v. Brown University*, 24 R.I. 179, 52 A. 891 (1902), we are not unmindful of our statement in *Matunuck Beach Hotel, Inc. v. Sheldon*, R.I., 399 A.2d 489, 493 (1979) that "in *Rhode Island Ophthalmological*

*Society v. Cannon*, 113 R.I. 16, 317 A.2d 124 (1974), we completely abandoned the *Tillinghast* rule * * *." We note, however, that our rejection of the *Tillinghast* rule in the *Ophthalmological* case related only to use of the rule to limit standing to assert a claim in the first instance. In *Matunuck Beach Hotel, Inc. v. Sheldon* we extended the ruling in *Ophthalmological* and applied it to administrative appeals to the Superior Court under G.L. 1956 (1977 Reenactment) § 42–35–15.

ing of a potential claimant to assert his claim in the first instance.

 We thus conclude that Lind's failure to file a statement of his claim against Georgianna's estate deprives him of standing to appeal under § 33–23–1 from the Probate Court order allowing the final account. Lind's appeal is therefore denied and dismissed, the judgment appealed from is affirmed, and the case remanded to the Superior Court.

We observe that this court's ruling in *Tillinghast* resulted from a construction of G.L.1896, ch. 248, § 1 nearly identical to the current G.L.1956 (1969 Reenactment) § 33–23–1. We have adhered consistently to the *Tillinghast* construction of the "person aggrieved" language in all cases involving probate appeals, including *Vermette v. Cirillo*, 114 R.I. 66, 328 A.2d 419 (1974) decided shortly after the *Ophthalmological* case. In *Malinou v. Rhode Island Hospital Trust National Bank*, 116 R.I. 548, 359 A.2d 43 (1976), the *Tillinghast* construction of the probate appeals statute was challenged expressly. We disposed of *Malinou v. Rhode Island Hospital Trust National Bank* on other grounds and reserved the question of whether the *Ophthalmological* "injury in fact" test of standing applied to persons who assert the status of a "person aggrieved" under § 33–23–1. We do not reach that question in this appeal either, given our conclusion that Lind's failure to file a statement of claim is fatal under the circumstances of this case to his assertion of the status of a "person aggrieved" under § 33–23–1.