David R. HEFLIN

v.

John KOSZELA, Jr., et al.

No. 99-475-Appeal.

Supreme Court of Rhode Island.

June 11, 2001.

William G. Savistano, Edward J. Mulligan, Eli A. Mulligan, For Plaintiff.

Jeffrey Richardson, Harold Kessler, Providence, Jeffrey F. Richardson, Warwick, For Defendant.

**28** ■■■■■■■■■■■■■■■

Present: WILLIAMS, C.J.,
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

The plaintiff, David R. Heflin (Heflin), appeals from two Superior Court summary judgments entered in favor of two of the five named defendants in his civil action for negligence and damages. Orders were entered permitting entry of final judgment concerning the two defendants, John Koszela & Son, Inc., and the Estate of John Koszela, Sr. (Estate of Koszela), pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure.

## I

### Case Facts/Travel

On October 25, 1993, Heflin rented and lived in a house at 45 Barbs Hill Road in Coventry, Rhode Island. The property was owned by a trust, the sole trustee of which was one of the defendants, Bradford Gorham. One of the three trust beneficiaries was John Koszela, Jr. (John Jr.), the president and director of John Koszela & Son, Inc. (Koszela & Son), a Rhode Island corporation that also was a defendant. Koszela & Son owned and operated a lumberyard, hardware and automotive sports equipment business at 1284 Victory Highway in the town of Coventry. Summit Gas Company (Summit), a sole proprietorship owned and operated by John Koszela, Sr. (John Sr.), was another defendant. Summit was a propane gas sales business that operated from the same address and office space as Koszela & Son. Besides being John Jr.'s father, John Sr. also was the father-in-law of Summit's only employee, defendant Leonard J. Finnerty (Finnerty). At times, Finnerty also worked for the corporate defendant, John Koszela & Son.

To that intermix of family, business location and employee, we need only add that when Heflin called Summit about his malfunctioning propane gas heater, Summit dispatched Finnerty to make the repair and this lawsuit began to take shape.

Finnerty was not individually licensed to repair propane heaters. However, John Jr., in addition to being the president of Koszela & Son and Finnerty's brother-in-law, also was a licensed plumber. John Jr. authorized Summit and Finnerty to use, and work under, his license. Armed with John Jr.'s plumbing license, off went Finnerty, Summit's employee, to Heflin's place at 45 Barbs Hill Road to repair Heflin's propane gas heater. Repair it he did, and so well that, when he ignited the burner's pilot light, it exploded. Heflin claims he was severely injured, that Finnerty was negligent, and that all those at 1284 Victory Highway who had any business with Finnerty were responsible for Finnerty's negligence.

Some eighteen months after Finnerty's misadventure as a propane heater repairman, Heflin appears to have become serious about his claim against Finnerty and all those who touched Finnerty. However, by that time, John Sr., the sole proprietor of Summit, unfortunately had died, on April 13, 1995, and his estate already was pending in the Coventry Probate Court. Unfazed by John Sr.'s absence as a potential defendant, Heflin's attorney, on October 5, 1995, filed a rather unusual document entitled "Amended Claim Against the Estate" with the recently qualified coexecutors of the Estate of Koszela. Heflin's claim, in the amount of $500,000, was for damages allegedly resulting from the injuries caused by the propane gas heater explosion. The coexecutors of the estate promptly denied the claim, on October 10, 1995.

No stranger to the filing of unusual documents, over eight months later Heflin's attorney filed a combination probate appeal and civil negligence action in the Providence County Superior Court on June 27, 1995. In that action, Heflin named as defendants, John Koszela, Jr. and Harold Kessler, in their capacities as coexecutors of the Estate of John Koszela, Sr., John Koszela & Son, d/b/a Summit Gas Company, Leonard J. Finnerty, and Bradford Gorham who, as trustee, had leased the house to Heflin. In his complaint, he asserted that Koszela & Son was doing business as Summit, and that Finnerty was employed interchangeably by John Sr. and Koszela & Son d/b/a Summit. Consequently, he contended, both Koszela & Son and Summit were jointly and severally liable for Finnerty's negligent conduct. Subsequently, both Koszela & Son and the Estate of Koszela filed motions for summary judgment. Separate hearings were held on each motion. Both motions were granted by the respective hearing justices and separate Rule 54(b) final judgments were entered thereon. Heflin appeals from the two entries of summary judgment and his appeals therefrom were consolidated for hearing in this Court.

Additional facts will be supplied as needed.

## II

### Standard of Review

"When reviewing a summary judgment, we do so on a *de novo* basis, applying the same legal criteria as the trial court." *Kiley v. Patterson,* 763 A.2d 583, 585 (R.I. 2000). (Emphasis added.) "Only when a review of the evidence in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's order granting summary

judgment." *Id.* (quoting *J.R.P. Associates v. Bess Eaton Donut Flour Co.,* 685 A.2d 285, 286 (R.I.1996)). "Although the moving party bears the initial burden of establishing that no genuine issue of material fact exists for a finder of fact to resolve, * * * it can carry this burden successfully by submitting evidentiary materials, such as interrogatory answers, deposition testimony, admissions, or other specific documents, and/or pointing to the absence of such items in the evidence adduced by the parties." *Doe v. Gelineau,* 732 A.2d 43, 48 (R.I.1999). "If the moving party satisfies this burden, the nonmoving party then must identify any evidentiary materials already before the court and/or present its own competent evidence demonstrating that material facts remain in genuine dispute." *Id.* However, "the nonmoving party 'cannot rely solely on mere allegations or on the denials contained in the pleadings to defeat the motion.' " *Id.* (quoting *Avco Corp. v. Aetna Casualty & Surety Co.,* 679 A.2d 323, 327 (R.I.1996)).

## III

### Koszela & Son

■ The first summary judgment hearing addressed Koszela & Son's motion for summary judgment and its contention that it was a separate entity from Summit and, therefore, not liable for Finnerty's alleged negligence. It submitted that both businesses delivered a different product: Koszela & Son, being a licensed corporation in the retail lumber, hardware and automotive sports equipment business, whereas Summit being a propane gas sales company. It also noted that Summit maintained its own books, accounts and tax records; maintained a separate truck, phone line, and route customers; and that John Sr. declared Summit's income on his individual tax returns.

Heflin, in opposing summary judgment, countered that genuine issues of material fact existed. He asserted that Summit was the alter ego of Koszela & Son and that, through Summit, Finnerty actually was employed by Koszela & Son, thus imputing liability to Koszela & Son for Finnerty's alleged negligent acts.

After reviewing all the evidence before her, the hearing justice found that Heflin had failed to raise any genuine issue of material fact about whether Koszela & Son could be viewed as an alter ego of Summit. Instead, she found that Heflin's claim, if any, rested only against John Sr. doing business as Summit. We disagree.

Whether a person is an employee of a corporation is a question of fact. *See Brimbau v. Ausdale Equipment Rental Corp.*, 119 R.I. 14, 26, 376 A.2d 1058, 1064 (1977). "[T]o impose liability on a corporation for the acts of its employees, the facts of a particular case must 'render it unjust and inequitable to consider the subject corporation a separate entity' such as 'when the corporate entity "is used to defeat a public convenience, justify a wrong, protect fraud or defend crime * * *." ' " *McFarland v. Brier*, 769 A.2d 605, 613 (R.I.2001) (quoting *R & B Electric Co. v. Amco Construction Co.*, 471 A.2d 1351, 1354 (R.I.1984)). The alter ego doctrine permits creditors of a corporation to reach the assets of the individual or individuals that control the corporation. *See McFarland*, 769 A.2d at 613–14. The doctrine also "permit[s] creditors of an individual shareholder to reach the assets of the corporation when the requirements of the doctrine are satisfied." *Transamerica Cash Reserve, Inc. v. Dixie Power and Water, Inc.*, 789 P.2d 24, 26 (Utah 1990). *See also McFarland*, 769 A.2d at 613–14.

To invoke the equitable alter ego doctrine,

"there must be a concurrence of two circumstances: (1) there must be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Transamerica*, 789 P.2d at 26.

The second prong of the alter ego test " 'is addressed to the conscience of the court, and the circumstances under which it will be met will vary with each case.' " *Id.* However, to satisfy the second prong, "it must be shown that the corporation itself played a role in the inequitable conduct at issue." *Id.*

Our review of the record reveals that: (1) John Sr. was the owner of Summit as well as the Secretary/Treasurer of Koszela & Son; (2) Summit's business operated under John Jr.'s plumbing license; (3) John Jr. was the president and director of Koszela & Son; (4) both businesses were located at the same business address and in the same office space; (5) Koszela & Son's president and director, John Jr., paid cash wages to Finnerty; (6) Koszela & Son's secretary opened Summit's mail, answered Summit's telephone, kept Summit's books, handled Summit's banking and made business appointments for Summit; (7) Finnerty helped out at Koszela & Son's lumberyard; (8) occasionally, John Jr.'s son, an employee of Koszela & Son, would help Finnerty deliver gas; (9) in 1982, both businesses shared the same telephone number; (10) also in 1982, Summit sent out at least one account statement that was enclosed in a business envelope belonging to Koszela & Son.

Viewing all these facts in the light most favorable to Heflin, and drawing all reasonable inferences therefrom, we conclude

that there exists a genuine issue of material fact about whether Summit was the alter ego of Koszela & Son. Certainly, it is not unusual for a lumber and hardware business to sell propane gas. Consequently, the hearing justice erred in granting summary judgment in favor of Koszela & Son.

## IV

### The Estate of Koszela

At the conclusion of the hearing on the motion for summary judgment filed by the Estate of Koszela, the hearing justice found that Heflin had failed to commence action on the disallowed claim against the estate within the time proscribed in G.L. 1956 § 33–11–48. Consequently, she concluded that Heflin's subsequent Superior Court civil action against the Estate of Koszela was not timely filed and granted the estate's motion for summary judgment.

Heflin maintains that the hearing justice erred in applying § 33–11–48 to the instant action because that section applies only to claims made by the creditors of an estate. He asserts that he is not a creditor of the estate because his negligence action is a contingent claim to which applies the two-year statute of limitations contained in § 33–11–50. In addition, he avers that even if § 33–11–48 were applicable, the probate court should have permitted him to file an out-of-time claim because the coexecutors never gave him actual notice of the proceedings in the probate court. For the reasons stated below, we reject those appellate contentions.

"Questions of law and statutory interpretation * * * are reviewed *de novo* by this Court." *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I. 2001). "The question of whether a statute of limitations has run against a plaintiff's claim is * * * a question of law." *Hall v. Insurance Company of North America,* 727 A.2d 667, 669–70 (R.I.1999). Consequently, we will review *de novo* the propriety of the hearing justice's statute of limitations determination.

"A contingent claim, within the meaning of the [probate] statute, is one that depends for its effect upon some future event which may or may not happen." *Kimball v. Kelly,* 65 R.I. 484, 487, 16 A.2d 491, 492 (1940) (quoting *Hicks v. Wilbur,* 38 R.I. 268, 272, 94 A. 872, 874 (1915)). Although recovery for a tortious injury allegedly committed by a person who later dies may be uncertain, and although the amount of actual damages may be uncertain, at the time of the person's death the claim already has accrued and is not dependent upon some future event that may or may not happen. *See Hicks,* 38 R.I. at 272, 94 A. at 874. Thus, "claims arising in tort or for unliquidated damages [are] not contingent claims and must be filed against the estate of a deceased person in the probate court." *Kimball,* 65 R.I. at 487, 16 A.2d at 492. Consequently, because Heflin's negligence action is not a contingent claim, he, like every other creditor of the estate of Koszela, was required to file his probate court claim pursuant to § 33–11–5, and to file any subsequent Superior Court action challenging the denial of that probate claim, pursuant to § 33–11–48.

The time allowed for filing claims against a decedent's estate in the probate court is governed by § 33–11–5. Section 33–11–5 provides that "[c]laims shall be filed within six (6) months from [the date of] the first publication [giving notice that the executor or administrator of the estate has been qualified]. Claims not filed within six (6) months from the publication shall be barred * * *." When a claim is disallowed "prior to the expiration of six (6)

months from first publication," then a claimant may bring an action in the Superior Court "no later than thirty (30) days after the expiration of six (6) months from first publication * * *." Section 33–11–48.

In this case, the record reveals that the co-executors of the Estate of Koszela were qualified and published notice of their qualification had duly been given on June 2, 1995. Pursuant to § 33–11–5, Heflin timely filed his claim against the estate in the probate court on October 5, 1995. Five days later, on October 10, 1995, the co-executors disallowed the claim. However, Heflin took no further action on the disallowed claim until June 26, 1996, when he filed the instant civil action in the Superior Court. That filing included his probate claim that, by virtue of the statute of limitations proscribed by § 33–11–48, had expired over five months earlier. In view of the foregoing, we conclude from our *de novo* review that the trial justice did not err in finding that Heflin's Superior Court action against the Estate of Koszela was not timely filed pursuant to § 33–11–48 and, consequently, that it was barred.

 Heflin next contends that even if his claim was untimely filed, the fact that the coexecutors did not give him actual notice of the probate proceedings meant that he should have been permitted to file his claim out of time. He relies upon *In re Estate of Santoro*, 572 A.2d 298 (R.I.1990) to support this contention. That reliance, however, is misplaced entirely because the present case readily is distinguishable from *Santoro*.

When a claim against an estate has been timely brought in the probate court and then disallowed, a claimant then may file a Superior Court action pursuant to § 33–11–48. However, if the claim is not timely filed in the probate court in the first instance, it is forever barred, except:

"that a creditor who, by reason of accident, mistake or any other cause, has failed to file his or her claim, may, at any time, before the distribution of the estate, petition the probate court for leave to file his or her claim, and the probate court, after notice to the executor or administrator of the estate and a hearing on the petition, may in its discretion, grant leave to file the claim upon the terms, if any, as the court shall prescribe * * *." Section 33–11–5.

In *Santoro*, a petition to reopen an estate was filed after the petitioner initially had failed to file a timely claim in the probate court. The executrix asserted that §§ 33–11–4 and 33–11–5 acted as a bar to the petition. In response, the petitioner contended that because it never had received actual notice of the probate proceedings, the subsequent closure of the estate had deprived it of its property without due process of the law. We agreed, holding that:

"[i]f a creditor's identity is known or reasonably ascertainable, then the Due Process Clause requires that the creditor be given notice by mail, or other means as certain, to ensure actual notice. This requirement is consistent with the purpose of our nonclaim probate statutes. The state's legitimate interest in the expeditious resolution of probate proceedings is not frustrated by the requirement that actual notice be given to known or reasonably ascertainable creditors of the estate." *In re Estate of Santoro*, 572 A.2d at 301.

In the present case, however, Heflin actually did file a timely claim against the Estate of Koszela in the probate court. It was his subsequent action in the Superior Court that was not timely filed. He asserts that his failure to receive actual notice about the probate proceedings in which he already had participated some-

how should permit him to file an out-of-time action in the Superior Court. Such an interpretation would frustrate the state's legitimate interest in the expeditious completion of probate proceedings.

 Moreover, the purpose of the notice requirement in § 33–11–5 is to give all the creditors of an estate an opportunity to file a timely claim against the estate in the probate court. That is because, " '[t]he statutory command for notice embodies a basic principle of justice—that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights.' " *In re Estate of Jenkins v. Guyton*, 912 S.W.2d 134, 138 (Tenn.1995). "[A] party's general appearance [before any tribunal] has the effect of submitting that party to the jurisdiction of the tribunal for all purposes." *Estate of Konigunda v. Town of Coventry*, 605 A.2d 834, 836 (R.I.1992). "Waiver is the 'intentional relinquishment or abandonment of a known right.' " *State v. Griffin*, 567 A.2d 796, 799 (R.I.1989) (quoting *State v. Brown*, 121 R.I. 422, 426, 399 A.2d 1222, 1225 (1979) and *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938)). "[A]ttendance at a zoning board hearing by a property owner who was entitled to notice constituted a waiver since the objective of the notice requirement was to give property owners an opportunity to be heard." *Estate of Konigunda*, 605 A.2d at 836. Likewise, the filing of a timely claim against an estate in the probate court constitutes a waiver of the right to actual notice since the objective of the notice requirement was to give creditors an opportunity to timely file their claims and to be heard.

In the present case, Heflin filed a timely claim against the Estate of Koszela in the probate court. That claim was disallowed. He then failed to timely file his action against the estate in the Superior Court.

After thoroughly reviewing the record we discern that Heflin not only had ample opportunity to file his Superior Court action after his probate claim had been disallowed, but also can show no prejudice from the lack of any actual notice to him of the probate proceedings. *See Estate of Konigunda*, 605 A.2d at 836.

For the foregoing reasons, Heflin's appeal from the granting of summary judgment in favor of the Estate of Koszela is denied and dismissed and the final judgment appealed therefrom is affirmed. Heflin's appeal from the granting of summary judgment in favor of John Koszela & Son, Inc., is sustained and the summary judgment appealed therefrom is vacated. The papers in both appeals are remanded to the Superior Court.