DECISION
This matter is before the Court on plaintiff Key Financial Service's (Key Financial) Motion for Summary Judgment. The Defendants[1] object to this motion.
 Facts and Travel
On August 19, 1988, Jesse Oliver, Jr. the owner of property located at 5 Dixon Avenue in Bristol, RI (the "Property"), died. Before his death, he had written a will (the "Will"), under which he bequeathed the Property to Robert Oliver, Sr. (Robert). Additionally, the Will named Robert as Executor of the estate. Shortly thereafter, Robert executed a promissory note and mortgage on the Property in the amount of $122,000. On April 6, 1989, the promissory note and mortgage were assigned to the plaintiff in this case, Key Financial Services (Key Financial). Approximately two weeks later, on April 21, 1989, Robert issued an executor's deed to himself and procured the remaining interests in the Property via a deed issued by Mary Carlone, who had been granted a life estate in the Property under the Will.
Subsequently, however, it was revealed that Robert had never posted the bond required by his appointment as Executor of Jesse Oliver's estate. Consequentially, Augustine Smith ("Mr. Smith") moved the Bristol County Probate Court (Probate Court) to remove Robert as Executor and appoint himself as administrator in his place. The Probate Court granted the petition on February 5, 1991, and thereafter Mr. Smith filed an affidavit in the Town of Bristol Land Records declaring that the executor's deed issued by Robert as null and void. On March 1, 2001, Mr. Smith died before any action regarding the executor's deed could be taken in the Probate Court. In his place, the Probate Court appointed Robert Testa (Mr. Testa) as administrator on June 16, 2005.
Robert Oliver then defaulted on the promissory note assigned to Key Financial, and, as a result, Key Financial brought suit against him in this Court. The Court awarded partial summary judgment for Key Financial in the amount of $203,148.89. Execution was issued against Robert Oliver, and the Property was levied by Sheriff's action. Key Financial pursued the levy sale, and on November 27, 1996, it obtained all right and title held by Robert in the Property. The Sheriff's Deed of Execution Sale was issued on March 5, 1998.
On July 1, 2005, Key Financial filed this action against Robert Testa, as Administer of the Estate of Jesse Oliver, Jr., and Robert Oliver, Sr., seeking to quiet title as to any claims Robert Oliver Sr. may have to the Property. In response, Defendantsargue that the title of the property never passed to Key Financial, and it still remains in the estate of Jesse Oliver, Jr.
Key Financial has now moved for summary judgment.
 Standard of Review
The Court will grant a motion for summary judgment when, after "viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute[.]" Tavares v. Barbour,790 A.2d 1110, 1112 (R.I. 2002) (citations omitted). The moving party bears the initial burden of establishing that no genuine issues of material fact exist; if it does so successfully, then the burden shifts to the nonmoving party. Heflin v. Koszela, 774 A.2d 25, 29 (R.I. 2001). If the nonmoving party can demonstrate that an issue of material fact exists, the motion will be denied. Palmisciano v. Burrillville RacingAss'n., 603 A.2d 317, 320 (R.I. 1992) (citations omitted).
 Analysis
The issue in this case is whether Robert's execution of the promissory note and mortgage were within his power as a devisee, thus making those encumbrances, and the ensuing levy sale, valid. Key Financial argues that Robert Oliver, as devisee, was entitled to mortgage his property. In contrast, Defendants argue that the Property is still owned by the estate of Jesse Oliver, and they rely on several arguments to support this assertion.
First, Defendants argue that the executor's deed Robert issued to himself should be declared null and void. First, they argue that because Robert was never qualified as Executor of the estate, he had no power to issue an executor's deed. Furthermore, they argue that under R.I.G.L. 1956 § 33-12-6[2], even if Robert had been qualified as Executor, he would not have been able to transfer the property from the estate without permission of the Court, which he never received. In addition, Defendants argue that the Probate Court's February 5, 1991 decree amounted to a finding that Robert's issuance of the executor's deed was illegal and therefore invalid. In this Decree, the Probate Court stated, in part, that as ". . . [Robert Oliver] has not filed a bond, has not filed an inventory, and has improperly conveyed real estate and has not qualified by law for appointment, he is forthwith removed." Decree of Probate Judge Raymond A. Thomas of the Town of Bristol, in the Estate of Jesse Oliver, Jr., No. 88-68. Defendants contend that the abovementioned "improperly conveyed real estate" refers to Robert's transfer of the Property to himself by executor's deed.
The Defendants' reliance on these arguments, however, is misplaced. InDiCristofaro v. Beaudry, 113 R.I. 313, 319; 320 A.2d 597, 601 (1974), the Rhode Island Supreme Court held that "[t]itle to real property vests immediately upon a testator's death in the devisees." Thus, upon the death of Jesse Oliver, title to the Property immediately vested in Robert as the devisee, and did not need to be transferred to him by an executor's deed. Robert's failure to meet his required duties asExecutor, therefore, did not affect this interest in the land as adevisee. Regardless of the validity of the executor's deed, Robert, as the devisee and owner of the Property, was free to execute a promissory note and mortgage on it.
In response, however, the Defendants argue that the instant case provides an exception to this general principle. They claim that the land did not vest at the moment of Jesse Oliver's death because it was still subject to being sold to pay the debts of the estate. This argument fails as well. The fact that a piece of property may be needed to pay the debts of the estate does not prevent the title from vesting immediately upon the death of the testator. See Votolato v.McCaull, 80 R.I. 301, 306 (R.I. 1953), Honeymail v. Kelliher,20 R.I. 564, 40 A. 499 (1898). In Votolato, the Rhode Island Supreme Court found that "the legislature in enacting R.I. Gen. Laws § 33-12-6 has created in the devisee a fee simple subject to defeasance. Title to real property vests immediately upon a testator's death in the devisees. However, the title to such real estate is subject to defeasance, in that if an executor or administrator wishes to sell the property for the prompt and efficient settlement of the estate, he may do so with the probate court's permission." Id. Thus, the fact that the Property is still subject to the debts of the estate does not prevent it from vesting immediately to Robert upon the death of Jesse Oliver, Jr.
Secondly, Defendants argues that, even as a devisee, Robert could not have encumbered the Property under Section 33-13-3, which holds that
 "[n]o heir or devisee of a deceased person shall have power, within two (2) years and six (6) months after the first publication of the notice of the qualification of the first executor or administrator on the estate of the deceased person, to incumber or alien the real estate of the deceased so as to prevent or affect the sale of the real estate by the executor or administrator, if necessary, as prescribed by law. . . "
Defendants argue that under this statute, even if the Property had vested in Robert at the time of Jesse Oliver's death, he was statutorily barred from encumbering it for two and a half years after the Executor was qualified. When the mortgage and note were executed, argues Defendants, Robert had not been qualified as Executor, and thus the time period had not yet even begun to run.
However, Section 33-13-3 is inapplicable to the instant case. That statute bars encumbrances which are designed to "prevent or affect the sale of the real estate by the executor," and there is absolutely no evidence that the mortgage in this case was issued for this purpose. Thus, Robert was acting within his power as devisee when he encumbered the property with a mortgage.
Additionally, the Court's conclusion is further bolstered by this Court's award of $203,148.89 to Key Financial when Robert defaulted on his obligations. Had the Court not found that mortgage proper in that action, it would not have issued the judgment. Furthermore, in its Order Granting Key Financial Service Relief from the Automatic Stay To Continue with Eviction Action, the United States Bankruptcy Court allowed Key Financial to complete the eviction proceedings with respect to the Property, essentially finding that Key Financial had proper title to the Property. Had the mortgage and promissory notes been improperly issued, then these courts would not have confirmed Key Financial's right to the Property.
 Conclusion
In conclusion, the Court finds that Robert's execution of the promissory note and mortgage on the Property were well within his power as devisee. His interest in the Property was never defeased by the estate of Jesse Oliver, and, as a result, Plaintiff lawfully obtained title to the Property at execution sale. Accordingly, summary judgment is granted to Key Financial on its claim to quiet title in the Property as it related to the Defendants, Robert Oliver, Sr. and 5 Dixon Ave. Associates.
[1] The present Administrator of the estate, Robert Testa, is only a placeholder for the purposes of this civil action. The actual defendants in interest of this case, Robert Oliver Sr. and his assignees (collectively,"Defendants"), did not object to this appointment.
[2] Section 33-12-6, in its entirety, provides:
 "The executor or administrator may sell the real estate of a deceased person despite the sufficiency of the personal property to pay the debts, funeral expenses and the items above enumerated whenever in the discretion of the probate court this action seems desirable in effecting a prompt and efficient settlement of the estate; provided, however, that this authority shall not be given with reference to real estate specifically devised, unless the specific devisees consent in writing thereto. An executor with a valid power of sale under a will may convey specifically devised property with the written consent of the specific devisee."