TRUSTEES OF HOUSE OF THE ANGEL GUARDIAN, BOSTON

*vs.* JOHN F. DONOVAN.

APRIL 10, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This is a probate appeal by the trustees of House of Angel Guardian, Boston, who are hereinafter called the appellants, from a decree entered in the probate court of Woonsocket, granting letters testamentary to John F. Donovan, the executor named in the will of Felix H. O'Neill, deceased. It was tried to a justice of the superior court, sitting without a jury, and resulted in a decision affirming the decree of the probate court. The case is before us upon appellants' exceptions to that decision.

The will, in which House of the Angel Guardian, Boston, was one of the residuary legatees, was executed by the testator December 11, 1923. Following the latter's death on May 10, 1942, the appellee, who had been the testator's guardian, presented for probate an instrument, executed June 10, 1936, which he alleged to be the last will and testament of Felix H. O'Neill. That instrument was denied probate on the ground that it was procured through the appellee's exercise of undue influence upon O'Neill. This decision was approved on appeal to the superior court and later was affirmed by this court. *Donovan* v. *Potter,* 70 R. I. 75.

Thereafter the will involved herein was duly proved and allowed in the probate court. Thereupon, over the objection of the appellants, that court entered a decree granting letters testamentary to the appellee; and the appellants took an appeal therefrom to the superior court, on the ground that the appellee was not a legally competent person under the statute to execute the trust imposed upon him.

The superior court, after a hearing, decided in substance that the provisions of general laws 1938, chapter 571, §1, were mandatory; that they were intended to give effect to the will of the testator, if legally possible; that the words "legally competent", as used in that section, were to be given the restricted meaning which they had at common law; and that notwithstanding the court's finding that the appellee's conduct, in connection with his attempted probate of another instrument procured by his undue influence, was objectionable, it nevertheless was required to carry out the expressed intent of the legislature by appointing the executor named in the will, if he was legally competent and gave the required bond.

The appellants contend that a court exercising probate jurisdiction under §1 of chap. 571 is clothed with judicial discretion to pass not only on the legal competency of an executor named in a will but also upon his suitability; and to reject him for any cause which would have been sufficient to remove an executor under chap. 575, §11. In other words, they argue that the instant case is governed by the opinion of this court in *Perry* v. *DeWolf*, 2 R. I. 103, which held that a probate court could refuse appointment to an executor named in a will upon any ground for which he could be later removed under the pertinent removal statute.

Their contentions present two main questions for determination. First, under G. L. 1938, chap. 571, §1, has a probate court any discretionary power, upon the probate of a will, to refuse to issue letters testamentary to the executor named therein, if such nominee is legally competent and gives the bond required by statute? Second, what meaning

was intended by the legislature to be given to the words "legally competent" as used in §1 of chap. 571?

At the outset two things should be kept in mind, namely, that in this state the probate court derives its jurisdiction wholly from the statute and that the original appointment of an executor and the removal of one who had been appointed are now governed by separate and explicit statutes.

Chapter 571, §1, referred to by the parties as the appointive statute, reads: "Upon the probate of a will the probate court shall issue letters testamentary thereon to the executor named therein, if he is legally competent, and if he gives bond as by law required."

Chapter 575, §11, referred to as the removal statute, reads: "Whenever an executor, administrator, or guardian shall for any cause become incapable of executing his trust, or shall neglect or refuse to do the duties thereof, or shall waste the estate of his ward or that on which he administers, the probate court, upon petition, and after hearing, may remove such executor, administrator or guardian from office and appoint an administrator or guardian in place of the person so removed, and take such other action as occasion may require."

Taking up the first question as to the probate court's discretionary power, it should be noted that the appointive statute came into the law after the removal statute. Clearly they are different in form and substance. The appointive statute is subject to two express conditions but is otherwise mandatory in form. Its terms are plain and unambiguous. No discretion is mentioned directly or indirectly; nor is any discretionary power necessary to be implied in order reasonably to give effect to the language of that section and the purpose of the chapter as a whole. The only stated conditions are that the executor named in the will must be "legally competent" and give the bond required by statute; and it is provided that if these conditions are fulfilled, the court *shall* issue letters testamentary to the executor named in the will. These provisions are far from stating that the court

*may* reject the named executor, if he be legally competent, in favor of another who, in the court's opinion, might be in fact a more suitable choice.

It is different in the case of the appointment of an *administrator,* whether of an intestate's estate or with a will annexed, because then the statute expressly gives the court authority to consider the suitability of the person to be appointed, as well as his legal competency. Our appointive statute apparently was patterned to carry out the intent of the testator, so far as it was not illegal. The latter's nomination of an executor, if he be not disqualified by law, is as much a part of the will as are his statements of legacies and we see no good reason, under the law as now written, why both should not be entitled to the same protection. The probate court might well differ with a testator as to the wisdom or suitability of the latter's selection of an executor as a matter of fact; but as a matter of law the testator now has the right, within the statutory provisions, to designate how and through whom his property should be administered. Therefore we are of the opinion that the probate court, upon the probate of a will, has no discretionary power under §1 to refuse to issue letters testamentary to the executor named in such will, if such nominee is legally competent and gives the required bond.

This conclusion finds support in the great weight of authority and decided cases in this country. In our opinion the law on this point is correctly stated in 2 Woerner's Am. Law of Admn. (3d ed.) 776 as follows: "The court has no discretion in this respect, but must grant the letters to the person or persons nominated, unless such person is disqualified by law." Again, in Thompson on Wills (2d ed.), chap. 35, §550, the author says, in connection with the appointment of executors, "And in the absence of any statute expressly disqualifying any particular class of persons, or conferring a discretion upon the court vested with the power of appointment, the rule will prevail that courts have no discretion in respect to the issue of letters to the persons

nominated in the will, and the person appointed by the will can not be rejected by the court except where the law expressly so provides."

Statements of the law to the same effect are to be found in 33 C. J. S. 903, §22, and in 11 R. C. L. 31, §17; and the great majority of the cases decided under similar appointive statutes also apply that general principle. It is conceded that appellants have respectable authority for a contrary view under an appointive statute like ours. *In re Estate Cachelin,* 124 Neb. 556. Additional support perhaps may be gained from some of the language or the results found in certain of the other cases relied on by the appellants. But some of such cases were not under any explicit appointive statute and most of them involved the appointment of an *administrator,* or the *removal* of an executor, or the appointment of an executor under a statute which apparently was broad enough to give the court discretionary power to pass upon the nominee's suitability as well as his legal competency.

At any rate, those cases, so far as they are in point, represent a minority view of the law usually applied under an explicit appointive statute like ours. The general rule established by the great weight of authority, as to the appointment of an executor under such a statute, is that probate courts ordinarily have no discretionary power to refuse appointment of an executor named in a will, unless that person is disqualified by law or unless such discretionary power is expressly given to the court by statute. Examples of the application of this rule are too numerous to cite and many of them may be found in 95 A. L. R. 833 n.

From an examination of all the authorities cited to us, and having in mind the form, substance and history of our own appointive statute, as well as the safeguards against improper administration that are established by other provisions requiring a bond and authorizing the removal of an executor, we conclude that the reasoning and ruling of the trial justice on this point were correct.

But the appellants also contend that the probate court in any event construed the statute too narrowly. They say that the words "legally competent" were intended by the legislature to embrace not only the designated executor's legal capacity to make a will but also his other qualifications of fitness or suitability, the lack of which would warrant his removal under chap. 575, §11. In short, they argue that the provisions of the removal statute should be read into the appointive statute upon the authority of *Perry* v. *DeWolf, supra,* which they say supports their claim that the court has the right to reject an executor named in the will, if unusual facts in evidence show him to be unsuitable to discharge the trust imposed upon him.

These contentions suggest the second main question to be determined. A brief reference to the *Perry* case and to the history of the statute will show why we do not agree with them. That case was decided in 1852. At that time, as appellants concede, there was no explicit appointive statute. There was, however, a removal statute which included various grounds relating not only to the executor's competency in law but also to his suitability in fact to perform his duties. In that case the court apparently reasoned that in the absence of any appointive statute to the contrary it was fair to presume that the legislature intended to grant the probate court, in the matter of an executor's appointment, similar authority to that exercised by it under the removal statute; and to authorize the refusal of letters testamentary to an executor named in a will, if there existed any cause which would have been sufficient to warrant his disqualification under the then existing removal statute.

Thereafter a specific appointive statute was enacted by the legislature and this appears in the revised statutes of Rhode Island 1857 as chap. 156, section 1. It reads: "Upon the probate of the will of any deceased person, letters testamentary shall be granted to the executor named therein, provided he be of full age, and give bond as hereinafter required." Coming so shortly after the court's decision in

the *Perry* case, this mandatory and explicit enactment obviously does not support a conclusion that the legislature then intended that the probate court should have, as to the appointment of an executor, the broad discretion and scope afforded by the court's earlier decision.

Later modifications of the appointive statute appear in various revisions of our laws in 1872, 1882 and 1896. But all of these restatements of this statute, apart from requirements as to bond, seem to contemplate that the only condition to be satisfied by an executor named in a will was his legal qualification or capacity to make a will. Finally, the section was rewritten in the Court and Practice Act of 1905, chap. 41, sec. 815, wherein the words "legally competent" appear for the first time. There has been no change in terminology since that date and it now appears as §1 of chap. 571.

Evidently the words "legally competent" were used to express in shorter form what the legislature from time to time had declared to be the law rather than to make any material change therein. Nothing in the appointive statute, or in its history, shows any intention on the part of the legislature to give these words as broad a meaning as the words "suitable persons and competent" which are used expressly in the statute governing the appointment of an administrator, chap. 575, §9. And clearly the grounds set forth in the removal statute, chap. 575, §11, go beyond mere legal incompetency.

Had the legislature intended in 1905 to grant to the probate court, as to the appointment of an executor, the same authority that it already had as to the appointment of an administrator, or as to the removal of an executor, it seems improbable that the words "legally competent" alone would have been used, because such words had a definite and more restricted meaning at common law. Moreover, if such authority were intended it could easily have been expressed by incorporating into §1, directly or by reference, the language of the statute governing the appointment of

an administrator, or the scope suggested by the grounds stated in the removal statute.

The words "legally competent", as used at common law and in the practice in England that was comparable to our probate practice, were generally understood to mean a person's capacity in law to make a will. See 24 Words & Phrases (Perm. ed.) 568; 2 Blackstone's Comm. 503. In our opinion these words were used in §1 by the legislature in such restricted meaning and were intended to limit the court's jurisdiction in the matter of the appointment of an executor more strictly than was the case in the appointment of an administrator or in the removal of an executor. Moreover, in addition to the history of this statute and the meaning of the words "legally competent", there is authority that the terms of a statute stating grounds for removal of an executor should not be read into another explicit statute governing the appointment of an executor. See *State ex rel. Abercrombie* v. *Holtcamp*, 267 Mo. 412.

The exceptions of the appellants are overruled, and the case is remitted to the superior court for entry of a decree affirming the decree entered in the probate court.

*John J. Mee,* for appellants.

*Higgins & Silverstein, John R. Higgins,* for appellee.