[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This is an appeal from an order of the Probate Court of the City of Cranston (Probate Court), entered on September 6, 2002, granting Ann Marie Dickson (Appellee) the right to discovery, including, but not limited to, Requests for Production from Casimiro J. Notarianni (Appellant), the executor of the Will of Anna M. Notarianni (Decedent). Jurisdiction is pursuant to G.L. 1956 (2002 Supp.) § 33-23-1.
 FACTS AND TRAVEL
On February 28, 2002, the Decedent died testate in the City of Cranston, County of Providence, State of Rhode Island. At that time, the Decedent and the Appellant were married and had three children: Appellee, Paula E. Hohlmaier (Paula), and David F. Notarianni (David). On or about March 18, 2002, a Petition to Probate the Will of Decedent, dated May 12, 1989, was filed with the Probate Court. David filed a petition to probate the Decedent's Will and estimated the Decedent's personal estate at $1.00.
On or about April 25, 2002, an Objection was filed with the Probate Court by the Appellee, alleging that the nominated executor of the Will, the Appellant, suffered from questionable mental capacity, and as such, was unable to perform his duties as executor. On said date, the Probate Court Judge overruled the Objection, admitted the Will of the Decedent into Probate, and appointed Appellant as executor of the estate upon the filing of a bond in the sum of $50,000 without surety. No appeal was filed to the Probate Court's decision to admit the Will to Probate and to appoint the Appellant as the executor of the estate.
The provisions of the Will at issue are as follows:
 "Second: In the event at the time of my death there is any property, real, tangible or intangible, held jointly in my name in the name of any other person or persons, I give, devise and bequeath all my right, title, and interest in said property or properties to that person or those persons whose name or names appear as joint owners of said properties, provided such person or persons survive me.
 Third: I give, devise and bequeath all the rest, residue and remainder of the estate, real and personal, wheresoever situated, of which I shall die seized or possessed including any property over which I may have the power of appointment, which power I hereby exercise, and including all real estate hereafter acquired by me, to my husband, Casimiro J. Notarianni, if he shall survive me." (Emphasis added).
Paragraph Seven provides, in pertinent part, that the Appellee is the alternate executrix of the Decedent's Will should the Appellant "fail for any reason to qualify or shall cease to serve as Executor."
On or about June 7, 2002, the Appellant, as executor, filed an inventory of the Decedent's estate listing the sole estate asset as a Citizens Bank account in the amount of $18,000. Coincident with the filing of this inventory, the Appellant gave the Appellee an envelope containing bank checks totaling $84,464.77, payable to the Appellee and her children, Laurel A. Picard and Matthew A. Dickson, stating that, "mom [the Decedent] wanted you to have this." After the Appellee opened the envelope and discovered its contents, she allegedly asked the Appellant about the checks. The Appellee claims the Appellant was confused by this question and said, "I'm going to have to find out about this." The Appellee further alleges that the Appellant asked her how much the checks were for and stated that he didn't know he had that much money. The Appellant allegedly then asked the Appellee where the checks came from and said he would have to check with David. Despite attempts to talk with her father, the Appellant, directly about these issues, the Appellee claims her efforts at clarification have been frustrated by the Appellant's confusion and by the apparent influence of David and Paula over him.
On or about August 21, 2002, Appellee filed with the Probate Court a Miscellaneous Petition to Exhibit Condition of Estate pursuant to G.L. § 33-17-13, an Objection to Inventory pursuant to G.L. §§ 33-9-1 and 33-17-1(1)(i), and a Miscellaneous Petition for Discovery. The Petitions alleged, among other things, that the Appellant, as executor, had not truly inventoried the Decedent's estate and was acting under the undue influence of others in the discharge of his fiduciary duties. The Appellee alleged that she was an interested person in the Decedent's estate.
On August 29, 2002, Appellee's Petitions were heard together with the Objections of the Appellant, the executor. At the hearing, the Appellee's sole argument presented to the Probate Court concerned the fact that the Appellee had received a draft totaling in excess of $50,000 from the Appellant and that when she asked him about its source, he could not recall tendering the funds to her. No testimony or documentation was presented to the Probate Court at the hearing. When Appellant's counsel requested the Appellee's counsel produce copies of the documentation evidencing that the funds were tendered to the Appellee, the Appellee's counsel allegedly advised the Probate Court that he had left the copies of the check in his office.
On September 6, 2002, the Probate Court granted the Appellee the right to conduct discovery, including, but not limited to, Requests for Production from the executor, the Appellant, of any and all records of property in which the Decedent had an interest within one year of her death to the present (February 28, 2001 to present). Additionally, the Probate Court granted the Appellee the right to issue subpoena duces tecum addressed to Citizens Bank and any other bank, credit union, broker, etc., that may be identified in discovery, to identify and produce records of property in which the Decedent had an interest during the period, February 28, 2001 to present. The Probate Court continued the Appellant's inventory and the Appellee's Objection thereto, as well as the Appellee's Petition to Exhibit Condition of Estatenisi pending conclusion of discovery. The instant appeal followed.
The Appellant asserts three reasons for appealing the Probate Court's order: (1) the Appellee is neither a beneficiary nor a creditor of the estate of the Decedent, and as such, has no standing to challenge the inventory submitted by Appellant or any other order of the Probate Court concerning the estate; (2) no evidence was presented to the Probate Court supporting the Appellee's allegation that the inventory submitted by the Appellant was inaccurate or incorrect; and (3) the order requiring submission of bank records and permitting the Appellee to subpoena the Appellant's personal bank records violates the Appellant's privacy rights.
 STANDARD OF REVIEW
This Court's review of the Probate Court's order is governed by G.L. 1956 (2002 Supp.) § 33-23-1. Subsection (a) provides in part: "[a]ny person aggrieved by an order or decree of a probate court (hereinafter `appellant'), may, unless provisions be made to the contrary, appeal to the superior court for the county in which the probate court is established, by taking the following procedure . . ." To qualify as an aggrieved person under this probate appeals statute, the Probate Court order must "adversely affect in a substantial manner some personal or property right of the [Appellant] or impose some burden or obligation upon him."Vermette v. Cirillo, 114 R.I. 66, 68, 328 A.2d 419, 420 (1974).
Pursuant to subsection (d), "[a]n appeal under this chapter is not an appeal on error but is to be heard de novo in the superior court." The Rhode Island Supreme Court has reiterated this function of the Superior Court in appeals from the Probate Court, stating the Superior Court acts as a "court for retrial of the case de novo." In re Estate of Taylor, 114 R.I. 562, 564,337 A.2d 236, 238 (R.I. 1975) (quoting Malinou v. McCarthy,98 R.I. 189, 192, 200 A.2d 578, 579 (1964)). The probate appeals statute further provides that if the record of probate court proceedings is introduced on appeal, "the findings of fact and/or decisions of the probate court may be given as much weight and deference as the superior court deems appropriate, however, the superior court shall not be bound by any such findings or decisions." Id.
 STANDING
The Appellant claims the Appellee has no standing to challenge the estate's inventory or the probate decree concerning the estate because the Appellee is not an interested party. The Appellant claims the Appellee does not have a financial interest in the estate, does not have present or prospective right to inherit from the decedent, and is not a creditor of the estate. Rather, the Appellant claims he is the sole beneficiary of the Decedent's estate. The Appellant argues the Decedent's Will, pursuant to Paragraph Second and Third, bequeathed all jointly held property to the joint owner and bequeathed all the rest, residue and remainder to the Appellant. The Appellant provided by affidavit that all of the Decedent's accounts were held jointly with him or listed him as the beneficiary with the exception of the sole account reported in the inventory, which constitutes the remainder to which the Appellant is also entitled. As a result, the Appellant contends that granting standing to the Appellee amounts to permitting any uninterested party to challenge inventories or Probate Court decrees. Additionally, the Appellant claims the Appellee did not file a statement of claim in the office of the clerk of the Probate Court.
Alternatively, the Appellee claims that she has standing to challenge the inventory of the Decedent's estate because she is an interested party. The Appellee claims she is an interested party because she has an interest in the Decedent's estate and because she is the alternate administratrix of the Decedent's estate. The Appellee claims she is an interested person because she has a right to inherit under Paragraph Second of the Decedent's Will. According to the Appellee, the Will provides that the accounts discussed in Paragraph Second do not provide for joint tenancy with right of survivorship such as to make the accounts listed therein non-probate assets. Rather, the Appellee claims the Will provides such accounts are probate assets and that she is a joint tenant of them. As such, the Appellee claims she is an interested person with standing to contest that said accounts should have been inventoried.
Additionally, the Appellee claims she is an interested party because of her appointment as alternate executor. Appellee claims any interested party may seek the removal of an executor who is unable to discharge his fiduciary duty to properly inventory and manage the estate. The Appellee claims the Appellant is unable to exhibit the condition of Decedent's estate without the prompting and influence of David, who was not appointed alternate executor. The Appellee points out that David was not appointed alternate executor and, therefore, can only influence the process vicariously through the Appellant. As successor executrix, pursuant to Paragraph Seven of the Will, the Appellee claims she is also an interested party with respect to the Appellant's ability to discharge his fiduciary duty and her own appointment.
Under Rhode Island law, an executor of a Will is obliged to "return to the probate court, under oath, a true inventory of all the personal property, both tangible and intangible, and of all claims, rights, causes of actions and other assets, other than real property, of the deceased, with an appraisement thereof as of the decedent's death." G.L. 1956 (2002 Supp.) § 33-9-1. As a condition of his bond, the executor is obliged "[t]o make and return to the probate court, as by law required, a true inventory of all of the testator's personal property which, at the time of making the inventory, shall have come into [his] possession or knowledge." G.L. 1956 (1995 Reenactment) § 33-17-1(1)(i). These obligations are absolute and unconditional and are not excused or limited when a fiduciary is also a beneficiary. Hayes v.Welling, 35 R.I. 76, 85 A. 630 (1913). Thus, the Appellant, despite claiming he is the sole beneficiary of the Decedent's estate, had a duty as executor to return a true inventory of all of the Decedent's personal property and assets with an appraisement of them as of February 28, 2002.
The correctness of the executor's inventory is always in issue and can be questioned by any interested party. Browning v.Liberty, 58 R.I. 507, 510-11, 193 A. 496, 497-98 (1937). "Any mistakes or errors in the inventory may be brought to the attention of the court by the executor or any one else interested in the estate whenever such mistakes or errors are discovered, in order that they may be corrected and the inventory amended."Id. at 512, 498.
Accordingly, if the Appellee is an interested party, she may challenge the Appellant's inventory as the Probate Court permitted. The Rhode Island Supreme Court has not specifically defined the phrase "interested party;" however, the facts in this case are similar to those in Browning where standing was found. In Browning, the Rhode Island Supreme Court found the Decedent's heirs at law and residuary legatees "could properly raise the question of correctness" with regard to the executor's inventory of the decedent's estate. Browning v. Liberty,58 R.I. 507, 514, 193 A. 496, 499 (1937). These individuals had a direct interest in the Decedent's estate.
The phrase, "interested party," refers to the following individuals who may contest a will: one who "may become a legatee or beneficiary under a will," a party with a "financial interest in property of [the] deceased," or a "part[y] who ha[s] a pecuniary interest in the subject of the contest, including heirs at law of the testator." "Interested Party," West's Words andPhrases (1958) at 197-98 (citing Twigg v. Flynn, 68 F. Supp. 23
(S.D. Fla. 1946); Provenza v. Provenza, 29 So.2d 669,201 Miss. 836 (1947)); and West's Words and Phrases (2003 Supp.) at 167 (citing Cinnaminson v. First Camden Nat. Bank Trust Co.,238 A.2d 701 (N.J.Super. Ch. 1968)).
The Appellee has a similar interest in the Decedent's estate. The Appellee has a direct interest in the Decedent's estate pursuant to Paragraph Second, if the Appellee is a joint tenant on the Decedent's accounts as she claims. The Appellee also represents the Decedent's estate as the alternate executor according to Paragraph Seven. Although the Appellee did not need to file a statement of claim with the clerk of the Probate Court, pursuant to G.L. 1956 (2002 Supp.) § 33-11-4, because she is not a creditor or person with a claim against the estate, she is an interested party with standing to challenge the Appellant's inventory. See, e.g., Heflin v. Koszela, 774 A.2d 25, 31-32
(R.I. 2001) (requiring creditors of the estate to file a statement of claim). This Court finds the Probate Court properly reviewed the Appellee's challenge of the Appellant's inventory. This Court also recognizes that the Appellee may initiate additional proceedings concerning the estate: such as challenging the Appellant's ability to discharge his fiduciary duties pursuant to G.L. 1956 (1995 Reenactment) §§ 33-18-2 and 33-18-6.
 INVENTORY
As the Appellee has standing, this Court considers whether the Appellee presents sufficient evidence to this Court to warrant the Probate Court's continuance of the Appellant's inventory. This Court is not limited to the evidence presented to the Probate Court as this review is de novo. The Appellee presents this Court with evidence of inconsistencies and irregularities between the inventory filed by the Appellant and matters of the Appellee's personal knowledge and representations made to her by her parents regarding the Decedent's Will.
The Appellee alleges that David misrepresented the size of the Decedent's personal estate on the original petition. The Appellee claims this misrepresentation is apparent because the Appellant's bond was set only at $50,000 at the hearing on April 25, 2002. The Appellee claims this amount does not reflect the actual value of the Decedent's estate and was based on inaccurate representations regarding the size of the Decedent's personal estate made to the Probate Court. Based on information shared between the Appellee and her mother, the Decedent, during her lifetime, the Appellee claims there should be approximately $200,000 in liquid assets, including cash and other property located in a Citizens safe deposit box which stood in joint names among the Appellee and her parents. The Appellee further alleges that the inventory reflects no tangible personal property at all, while the Appellee claims to know the Decedent had valuable furs, jewelry, and other assets. The Appellee also notes that the one bank account on the Appellant's inventory is itemized without establishing the exact date of death balance with accrued interest. Additionally, the Appellee points out that David, through counsel, petitioned for probate whereas customarily the deceased's spouse and executor nominee — the Appellant — petition for probate of the Will and the appointment of the executor.
The Appellee further maintains that in conversations she had with the Appellant after the Decedent's death, the Appellant was unable to identify and distinguish between his and his wife's property without first consulting with David. The Appellee offers the checks totaling $84,464.77 given to her by the Appellant, provided as an exhibit to this Court, as evidence of the inaccuracy of the Appellant's inventory. The Appellee also contends the Decedent informed her that there were joint, trust, or IRA accounts payable to the Decedent's children and grandchildren which were not accounted for in the inventory.
After reviewing the aforementioned evidence, this Court finds the Appellee provided this Court with sufficient grounds to support an investigation into the accuracy of the Appellant's inventory. This Court affirms the Probate Court's continuance of the Appellant's inventory and remands this issue to the Probate Court for further review.
 DISCOVERY
The Appellant claims the Probate Court's discovery order violates his privacy rights concerning his personal bank records. The Appellant contends the Probate Court's order allows the Appellee to access both the Decedent's and the Appellant's bank records since all of the Decedent's accounts, except for the sole account reported on the inventory, were held jointly with the Appellant or listed the Appellant as the beneficiary. To the Appellant, such an order is sufficiently final to warrant Superior Court review because once the disclosure occurs, the order will become irreversible.
The Appellant further claims that revealing his bank records to an individual, to whom he does not want them revealed, imposes a burden and an obligation upon him which qualifies him as an "aggrieved person" under the probate appeals statute. The Appellant also claims that his banking records fall within the purview and protection of the State's Right to Privacy Statute. The Appellant contends that the Probate Court's order adversely affects in a substantial manner his personal rights to privacy of those records and warrants this Court's reversal of the Probate Court's order.
Conversely, the Appellee claims the Probate Court's order is interlocutory and not appealable pursuant to Burford v. Estateof Skelly, 699 A.2d 854, 856 (R.I. 1997). Accordingly, the Appellee claims this appeal should be summarily dismissed as a matter of law pursuant to the probate appeals statute.
In Burford, the Rhode Island Supreme Court made it clear that G.L. 1956 § 8-9-17 vests the Probate Courts of Rhode Island "with the authority to permit limited discovery it deems just and appropriate in the exercise of its sound discretion."699 A.2d at 856. To that end, the Supreme Court directed that "[t]he Probate Court may use the Superior Court Rules of Civil Procedure as a guide in fashioning these discovery orders." Id. In so finding, the Supreme Court determined that limited discovery orders from the Probate Courts lacking a requisite finality are not appealable to the Superior Court. Id. The Supreme Court specifically held that:
 "only those orders of the Probate Courts that contain an element of finality, including the appointment of an executor, an administrator C.T.A., or an administrator, or an order admitting or refusing to admit a will to probate, are orders that are sufficiently final and thereby appealable to the Superior Court pursuant to G.L. 1956 § 33-23-1." Id.
Given the Rhode Island Supreme Court's interpretation of appealable orders under G.L. 1956 (2002 Supp.) § 33-23-1, this Court may consider the Probate Court's discovery order only if the order contains such an element of finality. The order here is limited in scope as it allows the Appellee to access only specific records of the Decedent. The order is also in accordance with sound discretion because it enables necessary information to be obtained, which otherwise could not be, to assess the inventory of the Decedent's estate. However, the order also contains an element of finality. Once the discovery order is executed, the disclosure of the Appellant's bank records to the Appellee will be irreversible as the Appellant allegedly held the accounts at issue jointly with the Decedent.
The discovery order here has a definite quality not present in the discovery order in Burford. In Burford, the Rhode Island Supreme Court found insufficient finality in a probate limited discovery order because the order at issue regarded depositions and interrogatories. 699 A.2d at 855. The order here, permitting the production of records and the issuance of subpoenas duces tecum to that end, has conclusiveness not found in mere depositions and interrogatories. The order at issue therefore possesses an element of finality warranting review under G.L. 1956 (2002 Supp.) § 33-23-1.
Rhode Island General Law 1956 (1997 Reenactment) § 9-1-28.1
made "the policy of this state that every person in this state shall have a right to privacy." G.L. 1956 § 9-1-28.1(a). Under this statute, the legislature provided protection to four privacy interests. At issue here, although not specifically mentioned by the Appellant, is "the right to be secure from unreasonable publicity given to one's private life." G.L. 1956 (1997 Reenactment) § 9-1-28.1(a)(3). To make such a claim, four elements must be established. The Appellant does not specifically plead these elements. Rather, the Appellant simply states that his banking records fall within the purview and protection of the State's Privacy Statute, and therefore the Probate Court's order violates his privacy rights. The Appellant does not show "(1) `publication' (2) of a `private fact' (3) that the `fact which has been made public [is] one which would be offensive or objectionable to a reasonable man of ordinary sensibilities' . . . and (4) damages." Pontbriand v. Sundlun, 699 A.2d 856, 864
(R.I. 1997); see G.L. 1956 (1997 Reenactment) §§9-1-28.1(a)(3)(A)(i)-(ii), § 9-1-28.1(b).
With regard to the first requirement, publication under Rhode Island law requires only that the information be repeated to a third party. Pontbriand v. Sundlun, 699 A.2d 856, 864 (R.I. 1997) (citing Gaudette v. Carter, 100 R.I. 259, 260-61,214 A.2d 197, 199 (1965); Restatement (Second) Torts § 577). After the Probate Court's order is executed, the Decedent's bank record information will be published once it is repeated to the Appellee. In conjunction, the Appellant's bank record information may be incidentally published if, as the Appellant claims, all of the Decedent's accounts were jointly held by the Appellant.
The second requirement for the Appellant's privacy violation claim requires that the publication be of a "private fact." G.L. 1956 (1997 Reenactment) § 9-1-28.1(a)(3)(A)(i). Crucial here is whether the Appellant has a "reasonable expectation of privacy" in his bank records. The Rhode Island Supreme Court determined that the legislature sought to protect those privacy interests that are "of a type that a reasonable person would expect to be observed"; thus, the "plaintiff must demonstrate that [he] actually expected a disclosed fact to remain private, and that society would recognize this expectation of privacy as reasonable and be willing to respect it." Pontbriand, 699 A.2d at 865. The Rhode Island Supreme Court found "these issues in the first instance constitute mixed questions of law and fact to be determined by the trier of fact." Id.
Applying this standard in Pontbriand v. Sundlun,699 A.2d 856, 865 (R.I. 1997), the Rhode Island Supreme Court concluded a trier of fact might well determine that a depositor to a bank could have an expectation of privacy in his bank records and that such a depositor may entertain a good faith belief that the bank would not publicize such records. Other jurisdictions have recognized such expectations in respect to a bank's obligation to maintain the privacy of its depositors. See, e.g., SuburbanTrust Co. v. Waller, 44 Md. App. 335, 408 A.2d 758 (Md.Ct.App. 1979) (finding a bank has an obligation not to disclose financial information of depositors except by compulsion of law).
Here, the Probate Court's order requires the publication only of information regarding the Decedent's bank records. Only the Decedent's private facts are mentioned in the Probate Court's order, not the Appellant's. A reasonable person would expect such assets of a decedent to be accounted for through limited discovery so that an accurate inventory may be presented to the Probate Court in accordance with Rhode Island law. See G.L. 1956 (2002 Supp.) § 33-9-1 and G.L. 1956 (1995 Reenactment) § 33-17(1)(i) (requiring an executor to file an accurate inventory of an estate). A reasonable person would not find such information constitutes a private fact. The Appellant has neither demonstrated that he has an expectation of privacy in such information nor a good faith belief that the bank would not publicize such information in such a circumstance. SeePontbriand v. Sundlun, 699 A.2d 856, 865 (R.I. 1997).
Next, for a privacy violation to exist, "the fact which has been made public must be one which would be offensive or objectionable to a reasonable man of ordinary sensibilities."Id.; G.L. 1956 (1997 Reenactment) § 9-1-28.1(a)(3)(A)(ii). "This requirement ensures that any disclosure be of the sort that could be expected to inflict harm on the person whose private affairs are made points of public discussion." Id. This issue involves a "factual determination of what would be offensive or objectionable." Id.
The bank record information in the Probate Court's order is not reasonably objectionable or offensive to a reasonable person. To the contrary, the Decedent's bank account information is vital for the Probate Court to review the accuracy of the inventory of the Decedent's estate. A reasonable person would not find such discovery objectionable or offensive. The Probate Court's order only seeks information regarding probate assets which should have been inventoried. The Decedent's bank account information is essential for determining whether the Appellee is a joint tenant on the Decedent's accounts under Paragraph Second and whether the inventory submitted is accurate. Moreover, the Appellant has not demonstrated to this Court that all of the Decedent's bank accounts were jointly held only with the Appellant. Rather, the Appellant's affidavit provides only that he is a joint tenant of all of the Decedent's accounts.
Finally, the Appellant has not alleged damages, the fourth element of the privacy cause of action at issue. Thus, the Appellant has not met his burden of proof for his privacy violation claim.
This Court notes that the discovery at issue would likely be unnecessary if the Appellant had provided a full and accurate inventory of the Decedent's estate. Additionally, this Court points out that, despite the Appellant's failure to specifically plead his privacy claim, the facts of this case necessitate a limited discovery of the Decedent's records. The Probate Court's authority to permit limited discovery allows "a party access to relevant and often vital information." Burford,699 A.2d at 856.
 CONCLUSION
After its novo review of the entire record, this Court affirms the September 6, 2002 decision of the Probate Court in its entirety. Counsel shall prepare the appropriate order.