**In re ESTATE OF Joseph E. BUONANNO, Sr.**

No. 2005–103–M.P.

Supreme Court of Rhode Island.

Nov. 10, 2006.

Deming E. Sherman, Esq., Providence, for The Estate.

Warren A. Fitch, Esq., Washington, District of Columbia, for Emhart Industries.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

Justice SUTTELL, for the Court.

We granted the petition of the Estate of Joseph E. Buonanno, Sr. (petitioner or estate), for writ of certiorari to review an order of the Probate Court of the Town of South Kingstown (Probate Court) permitting Emhart Industries, Inc. (Emhart), to file a claim against the estate out of time. The estate contends that the Probate Court was without authority to enter the order because Emhart's motion was filed more than nine years after the estate's assets had been distributed. Emhart counters that the assets were not "fully distributed" because the executor never submitted a final accounting, an unrelated claim never was resolved, and the Probate Court never approved the purported distribution of assets.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised should not summarily be decided. After examining the written and oral submissions of the parties, we are of the opinion that the issues may be resolved without further briefing or argument. For the reasons set forth in this opinion, we quash the order issued by the Probate Court.

## Facts and Travel

The decedent, Joseph E. Buonanno, Sr., died on March 31, 1991. On April 15, 1991, the Probate Court admitted the decedent's will to probate and approved Joseph E. Buonanno, Jr., as executor. On September 25, 1991, Robert H. Carlson, Henry J. Noon, and Ralph V. Carlson, Jr. (collectively, CNC claimants), timely filed a statement of claim against the estate for potential liability in the amount of $1,191,908.83 for the cleanup of alleged contamination on property at 12 Dudley Street in Providence, referred to as the CNC Chemical Corporation site. The claim was contingent upon a determination of the CNC claimants' liability. The decedent previously had been a shareholder in and co-owner of CNC Chemical Corporation. According to petitioner, because the CNC claimants took no further action on their claim, the executor deemed it abandoned when the two-year statute of limitations set out in G.L.1956 § 33–11–50 tolled on May 1, 1993. Having paid all other claims, and in possession of signed releases from each of the estate's beneficiaries, the executor completed distribution of all the estate's assets on or before October 6, 1993.

Almost six years later, issues surrounding a different property previously owned by decedent set in motion the chain of events that led to Emhart's petitioning the Probate Court to file a claim out of time against the Buonanno estate. By letters dated September 15, 1999, and February 28, 2000, the United States Environmental Protection Agency (EPA) notified Emhart

of its status as a "potentially responsible" party subject to liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9606 and 9607. The EPA named Emhart a respondent and successor in liability of several chemical companies that operated from approximately 1943 to approximately 1971 at 2072 and 2074 Smith Street in North Providence, Rhode Island. The EPA had discovered chemical contamination in the soil of the property, and, based on CERCLA, included the two lots in its Centredale Manor Restoration Project Superfund Site (Centredale site). Subsequently, the EPA issued two Unilateral Administrative Orders (UAOs) (April 12, 2000 and March 26, 2001) pertaining to the Centredale site, and Emhart alleges that it has spent approximately $600,000 to date in complying with the UAOs.

Through its own investigations, Emhart ascertained that decedent formerly had owned a portion of the Centredale site and had operated a chemical facility there. Armed with this knowledge, on October 16, 2002, Emhart filed a petition for leave to file a claim out of time against the estate, seeking contribution from the estate for remediation costs associated with the Centredale site. On May 26, 2003, the Probate Court of South Kingstown granted Emhart's petition with a one-sentence order.[1] The estate then filed a petition for a writ of certiorari that this Court granted on October 29, 2004. We quashed the decision of the Probate Court and remanded with directions to issue a new decision "containing the requisite findings of fact and conclusions of law be rendered, consistent with the statutory criteria and with the appropriate exercise of judicial responsibility."

The Probate Court reviewed additional briefs from both parties and, in compliance with this Court's directive, issued a decision and order containing findings of fact and conclusions of law that clarified the basis of its original decision in greater detail. The Probate Court again granted Emhart leave to file a claim out of time, explaining that because no final accounting had been approved, nor could have been approved absent a valid release of the CNC claim, the "assets of the estate were never properly paid out." Thus the estate assets had not been "fully distributed," and the Probate Court retained authority under § 33–11–5 to permit the late filing of a claim. The petitioner filed a second petition for writ of certiorari, which this Court granted on September 22, 2005.

## Standard of Review

 This Court's review on a writ of certiorari is limited "to examining the record to determine if an error of law has been committed." *State v. Santiago*, 799 A.2d 285, 287 (R.I.2002) (quoting *State v. Gautier*, 774 A.2d 882, 886 (R.I.2001)). This Court will "not weigh the evidence presented below, but rather inspect the record to determine if any legally competent evidence exists therein to support the findings made by the trial justice." *Id.* Additionally, this Court has held that "[t]he Probate Court is given wide, although not unlimited, discretion in the matter of filing claims against estates out of time, and unless the Probate Court has abused that discretion its decision will not be reversed by this court." *Estate of McAlpine v. Estate of McAlpine*, 120 R.I. 135, 141, 386 A.2d 179, 182 (1978). Questions of law and statutory interpretation, however, are reviewed *de novo* by this Court. *Heflin v. Koszela*, 774 A.2d 25, 31

---

**1.** The order simply stated, "The Motion of Em[h]art Industries, Inc. to file a claim out of time pursuant to R.I.G.L. 33–11–5 is *Granted.*"

(R.I.2001). "It is well settled that when the language of a statute is clear and unambiguous, [we] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *State v. DiCicco,* 707 A.2d 251, 253 (R.I. 1998) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996)). "Moreover, when we examine an unambiguous statute, 'there is no room for statutory construction and we must apply the statute as written.'" *Id.* (quoting *In re Denisewich,* 643 A.2d 1194, 1197 (R.I.1994)).

## Discussion

■ The issue before us is similar to the question we resolved in *Chatigny v. Gancz,* 84 R.I. 255, 123 A.2d 140 (1956), *viz.,* "whether a probate court is warranted in entertaining a petition for leave to file a claim out of time when the facts show that a final distribution has been made, although without prior order of the probate court, and that there are no assets in the estate." *Id.* at 257, 123 A.2d at 141. The controlling statute is § 33–11–5 that provides in pertinent part:

"Claims shall be filed within six (6) months from the first publication. Claims not filed within six (6) months from the publication shall be barred; provided, that a creditor who, by reason of accident, mistake or any other cause, has failed to file his or her claim, may, at any time, before the distribution of the estate, petition the probate court for leave to file his or her claim, and the probate court, after notice to the executor or administrator of the estate and a hearing on the petition, may in its discretion, grant leave to file the claim upon the terms, if any, as the court shall prescribe, which claim, if allowed, shall be paid out of the assets remaining in the hands of the executor or administrator at the time of the receipt by him or her of notice of the pendency of a petition, and there shall be no appeal from an order or decree granting leave to file the claim."

A person who has a contingent claim may likewise file a claim under § 33–11–9 "within the time allowed for filing claims."

The plain language of § 33–11–5 specifically allows a creditor to petition the Probate Court for leave to file a claim out of time only "before the distribution of the estate," and further provides that such claim, if allowed, "shall be paid out of the assets remaining in the hands of the executor or administrator" at the time he or she receives notice of the petition. In *Chatigny,* we considered virtually identical language and said:

"The statute is clear and unambiguous and there can be no doubt or misunderstanding as to its meaning. Under its provisions a petition for leave to file a claim out of time must be presented *before* the distribution of the estate. If such petition is thus presented for filing, the probate court has the power to exercise its discretion to grant or refuse permission to file the claim out of time. But if the petition is presented for filing *after* the distribution of the estate, the probate court is without jurisdiction to entertain it." *Chatigny,* 84 R.I. at 257–58, 123 A.2d at 141.

*Emhart* attempts to distinguish *Chatigny* by noting that the administratrix in that case had submitted a final accounting to the Probate Court before the petition for leave to file a claim out of time was filed, but that in the Buonanno estate a final accounting neither has been filed nor approved. Such a distinction is of no significance, however. The operative factor in *Chatigny,* as in § 33–11–5, is the distribution of the estate, not the filing or approval of a final accounting. Moreover, in

*Slaimen v. Curtis,* 56 R.I. 351, 185 A. 684 (1936), we held that the filing of late claims is permissible "only if the estate has not been distributed, in the sense of actual payment of money and delivery of property to the distributee or distributees;" and further "that for the distribution to have the effect of preventing the filing of any further claims it is not necessary that such distribution be made under a prior court order, if the distribution be made to the parties who would be entitled thereto." *Id.* at 354, 185 A. at 685–86. It is the distribution of the estate, not the approval of a final accounting, that operates to foreclose petitions for leave to file untimely claims.

The fact that the executor of the Buonanno estate did not secure a release from the CNC claimants before distributing the assets does not alter the analysis. As the Probate Court concluded, "[w]hile it is true no final accounting is required for the fiduciary to properly pay out and fully distribute estate assets, the fiduciary still 'takes the risk' that the accounting will not be approved. A fiduciary endeavoring to incorrectly 'distribute' estate assets without a Court order runs the risk that [its] subsequent account may be disallowed." *See Smith v. Estate of Catterall,* 107 R.I. 729, 735, 271 A.2d 300, 303 (1970). We need not speculate at this time, however, about what perils, if any, may be lurking as a result of the executor's failure to seek approval of a final accounting. Suffice it to say that such risks do not include the possibility that the estate may become liable to an untimely creditor long after its assets have been distributed. Nor are we presented in this case with the issue of the viability of CNC's claim. Emhart has an entirely distinct and independent claim, and it is not permitted to enter the door that the CNC claimants may have left open to evade the clear language of § 33–11–5.

In the case under review, it is undisputed that Emhart did not file its petition for leave to file a claim out of time until after all the assets had been paid or delivered to the estate's beneficiaries. In light of the clear and unambiguous language of § 33–11–5 and this Court's holding in *Chatigny,* we conclude that the Probate Court erred in granting Emhart's petition. Therefore, we quash the order granting the petition to file a claim out of time, and we remand the papers to the Probate Court of the Town of South Kingstown with our decision endorsed thereon.

Justice ROBINSON did not participate.